The **WILLAMETTE HEIGHTS NEIGH-
BORHOOD ASSOCIATION**, an unincor-
porated association, et al., Plaintiffs,

v.

John A. VOLPE, Secretary of Transpor-
tation, et al., Defendants.

Civ. No. 71-641.

United States District Court,
D. Oregon.

Dec. 3, 1971.

Nick Chaivoe, Peterson, Chaivoe &
Peterson, L. A. Aschenbrenner, Marma-
duke, Aschenbrenner, Merten & Saltveit,
John A. Strait, Legal Aid Service, Ste-
phen R. McCarthy, Willner, Bennett &
Leonard, John J. Haugh, O'Connell, Goy-
ak, Haugh & Loew, Alan K. Brickley,
Davis, Jensen, DeFrancq & Holmes,
Portland, Or., for plaintiffs.

Sidney I. Lezak, United States Atty.,
Jack G. Collins, First Asst. U. S. Atty.,
Portland, Or., for defendants Volpe and
Simpson.

Lee Johnson, Atty. Gen., of Oregon, L.
I. Lindas, Asst. Atty. Gen., Frank C.
McKinney, Asst. Atty. Gen., Salem, Or.,
for defendant State of Oregon by and
through State Highway Commission.

## OPINION

ALFRED T. GOODWIN, District
Judge:

Plaintiffs seek to enjoin the comple-
tion of exit ramps from the West Fre-
mont interchange of Interstate Highway

405 (I–405) and to compel location hearings, design hearings, and compliance with Section 102(2) (C) of the National Environmental Policy Act of 1969, 42 U.S.C. § 4332(2) (C), for I–405 and Interstate Highway 505 (I–505) in Northwest Portland.

The first public hearing concerning I–405 was held June 13, 1960. General location and design features, alternate routes, and the proposed location of various exits were made public at that time. Federal location approval of the north end of I–405 was given on May 22, 1961. The Bureau of Public Roads, later the Federal Highway Administration, approved the design of the West Fremont interchange on August 16, 1963. The construction contract for Unit 2 of the West Fremont interchange was awarded on August 26, 1971. Construction is presently under way.

Plans for improving existing street access to the Columbia River Highway in order to handle the increased traffic volume caused by the West Fremont interchange of I–405 were first proposed by the Federal Division Engineer on July 16, 1963. After notice of a hearing "for right-of-way acquisition on the St. Helens Road-21st Avenue Section (Upshur Street-Thurman Street Couplet) of the Columbia River Highway within the City of Portland," a public hearing on the proposed street improvements was held on January 7, 1964.

At that hearing the assistant state highway engineer explained the details of the couplet proposal:

"* * * [I]n order to buy the right of way in an orderly fashion, we are holding the hearing on this eventual route today. The eventual route will be necessary to extend Upshur Street from 22nd Avenue to 25th Avenue where there is no street presently existing. Upshur Street would be a one-way street, westbound to N.W. 29th Avenue. Thurman Street would remain—a one-way street, eastbound from 28th Avenue East * * *. There is no intention under this plan

of buying additional rights of way along N.W. Thurman Street, 28th Street easterly, north along the existing sections of N.W. Upshur Street."

On April 28, 1965, the right-of-way project was designated U–171(10) and included in the Federal-Aid Urban Highway Program. The project data reveal that a total of seven families and five businesses were to be displaced. Federal approval of right-of-way acquisition was given on November 17, 1965.

Although it subsequently purchased the right-of-way, the State Highway Department did not extend Upshur Street. Computer projections had shown that the existing street system in the vicinity of the ramp terminals would be inadequate for 1972 traffic. Therefore, on June 19, 1968, the state requested an extension of I–405 to handle the traffic volume caused by "dumping Interstate traffic into the Northwest section of Portland at Northwest 21st Avenue * * *." Federal approval of this additional Interstate mileage, designated I–505, was given on December 13, 1968. Federal "approval and authorization to proceed with the preliminary engineering [of I–505] including preliminary relocation studies up to and including the location hearing and approval" was requested by the state on March 7, 1969, and given on March 25, 1969.

On April 15, 1969, the state requested federal location approval for I–505 under the Department of Transportation regulations, Policy and Procedure Memorandum (PPM) 20–8, in force prior to January 1969, on the basis of the prior right-of-way actions and authorizations. The state engineers said they hoped for early location approval "in order that a design hearing [which only became necessary after January 1969 to comply with the revised PPM 20–8] may be held at an early date."

The federal division engineer responded on April 23, 1969, that he was of the opinion that "tacit location approval" had been given "based on the fact that the location of a major highway facility

through this corridor has not changed from that presented at the previous public hearing [of January 7, 1964]."

■ The necessary program approvals to complete I–405 were obtained prior to the effective date of the National Environmental Policy Act of 1969 and of the Federal-Aid Highway Act of 1968. The plan for I–405 has always included provisions for an exit in the area now in controversy. All procedural requirements for the benefit of persons affected by the exit ramps have been implemented. Because I–405 was properly authorized, and because the exit is necessary to complete the project, an injunction halting further work on the I–405 exit is not justified.

However, the court's refusal to enjoin further construction of the I–405 exit is not to be construed by the defendants as creating an opportunity to fix the alignment of I–505. Nor may the completion of the ramps to and from I–405 be weighed as a factor in evaluating the environmental effects of various possible locations for I–505. As the federal highway administrators are fully aware, if final valid plans for I–505 (when and if approved) are not compatible with these I–405 ramps, then these ramps will have to be moved or modified to fit any new requirements for I–505.

■ With regard to I–505, the defendants admit they have not complied with revised PPM 20–8, effective January 18, 1969. The testimony of the assistant federal division engineer conceded that the change in the type of highway facility planned and its changed economic, social, and environmental impact required a new hearing in accordance with the provisions of PPM 20–8. He contends, however, that a design hearing will suffice. I have concluded that a design hearing alone will not satisfy the law's demands and that a location hearing is mandatory.

Location approval for I–505 was not requested until April 15, 1969, three months after PPM 20–8 had been revised, 23 C.F.R. Pt. 1, Appendix A

(1971), to implement Section 24 of the Federal-Aid Highway Act of 1968, 23 U.S.C. § 128(a), enacted by Pub.L.No. 90–495, August 23, 1968. Those amendments provide that, in addition to economic effects, location hearings should also consider the social effects of such a location, its impact on the environment, and its consistency with the goals and objectives of such urban planning as has been promulgated by the community. Thus, PPM 20–8, as revised on January 14, 1969, controls I–505 location and design approvals.

If "tacit location approval" of a 1964 right-of-way hearing as a substitute for a 1969 corridor public hearing were to be valid, the requirements of PPM 20–8, as revised, must have been foreseen and satisfied. There is no showing that they were. Such a coincidence is possible, but is not to be assumed. Since the record does not establish that the 1969 requirements were met in 1964, a new corridor public hearing for I–505 must be held.

■ An injunction will therefore issue to enjoin any further acquisition of right-of-way on I–505 until a location is determined in accordance with PPM 20–8. Before location proposals are presented, compliance with the provisions of the National Environmental Policy Act of 1969 will also be required. The defendants have conceded this requirement.

Noting all the prior urban-planning information gathered on the I–405 and I–505 freeway proposals, I believe that the preparation of a draft NEPA statement appraising the alternative locations available for I–505 can be accomplished within 30 days, and that the public hearing required in accordance with Appendix C of PPM 90–1 (1971), Location Stage Flow Chart, can be held not later than 30 days thereafter. Accordingly, the defendants shall proceed with the filing of the draft NEPA statement not later than January 7, 1972, and a location hearing on or about February 7, 1972.

This opinion shall constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

The plaintiffs are entitled to their costs and disbursements.